1   SEYFARTH SHAW LLP
    Michael J. Burns (SBN 172614)
2   E-mail:  mburns@seyfarth.com
    Selyn Hong (SBN 303398)
3   E-mail:  shong@seyfarth.com
    560 Mission Street, Suite 3100
4   San Francisco, California  94105
    Telephone:  (415) 397-2823
5   Facsimile:  (415) 397-8549

6   SEYFARTH SHAW LLP
    Pamela Q. Devata, Esq. (*Pro Hac Vice* Application
7   Forthcoming)
    E-mail:  pdevata@seyfarth.com
8   233 S. Wacker Drive, Suite 8000
    Chicago, Illinois 60606-6448
9   Telephone:     (312) 460-5000
    Facsimile:     (312) 460-7000
10
    SEYFARTH SHAW LLP
11  Robert T. Szyba, Esq. (*Pro Hac Vice* Application
    Forthcoming)
12  E-mail:  rszyba@seyfarth.com
    620 Eighth Avenue, 32nd Floor
13  New York, New York 10018-1618
    Telephone:     (212) 218-5500
14  Facsimile:     (212) 218-5226

15  Attorneys for Defendant
    MICHAELS STORES, INC.
16

17                      UNITED STATES DISTRICT COURT

18                    NORTHERN DISTRICT OF CALIFORNIA

19  MICHELLE BERCUT,                    Case No. _____

20                Plaintiff,            **NOTICE OF REMOVAL BY**
                                        **DEFENDANT MICHAELS STORES, INC.**
21        vs.                           **PURSUANT TO 28 U.S.C. §§ 1331, 1332 (c)**
                                        **AND (d)(2), 1441(a), 1446 AND 1453**
22  MICHAELS STORES, INC., and DOES 1-10,

23                Defendants.           [Declarations of Michael J. Burns and Yvonne
                                        Freeman filed concurrently herewith]
24
                                        Removed from Superior Court of the State of
25                                      California, County of Sonoma, Case No.
                                        SCV 257268
26
                                        Complaint First Filed: June 8, 2015
27                                      Remanded: March 2, 2017
28

───────────────────────────────────────────────
                      NOTICE OF REMOVAL

TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF MICHELLE BERCUT AND HER ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Michaels Stores, Inc. ("Defendant") hereby removes the above-referenced action from the Superior Court of the State of California for the County of Sonoma to the United States District Court for the Northern District of California asserting original jurisdiction under 28 U.S.C. §§ 1331, 1332 (c) and (d)(2), the Class Action Fairness Act of 2005 ("CAFA"), and removal jurisdiction under 28 U.S.C. §§1441(a), 1446, and 1453.  Defendant states that removal is proper for the following reasons:

## INTRODUCTION

1. On June 8, 2015, Plaintiff filed a purported Class Action Complaint for Violation of the Fair Credit Reporting Act (15 U.S.C. §§ 1681, *et seq.*) in the Superior Court of the State of California, County of Sonoma, entitled *Michelle Bercut, Plaintiff vs. Michaels Stores, Inc., and DOES 1 through 10, inclusive, Defendants*, SCV 257268 ("Complaint").

2. On June 16, 2015, Plaintiff served a copy of the Summons and Complaint on Defendant pursuant to Section 415.30 of the California Code of Civil Procedure.  On June 18, 2015, Defendant served on Plaintiff the Notice of Acknowledgment of Receipt of the Summons and Complaint.

3. On June 23, 2015, Defendant timely removed this action to the United Stated District Court, Northern District of California asserting federal question jurisdiction.  Declaration of Michael J. Burns ("Burns Decl."), ¶ 3, Exhibit B.

4. On July 14, 2015, pursuant to Rule of Procedure 7.5 of the Judicial Panel on Multidistrict Litigation, the *Bercut v. Michaels Stores, Inc.* action was transferred to the United States District Court for the District of New Jersey to be part of MDL No. 2615.  Burns Decl., ¶ 4, Exhibit C.

5. On August 10, 2015, Defendant filed motions to dismiss the complaints in the three actions comprising MDL No. 2615, including this one.  Defendant sought in part to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.  Defendant challenged Plaintiff's standing, asserting that the Complaint failed to allege injury-in-fact.

6. The United States District Court for the District of New Jersey stayed MDL No. 2615 pending the United States Supreme Court's decision in the then-pending case, *Spokeo, Inc. v. Robbins*. On May 16, 2016, the Supreme Court issued its decision in *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540 (2016). On May 17, 2016, the United States District Court for the District of New Jersey ordered the parties to reformulate and resubmit their motions to dismiss in light of *Spokeo*. Thereafter, on June 23, 2016, Defendant submitted a consolidated motion to dismiss all of the complaints in MDL No. 2615, including the Complaint in this action, under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

7. On January 24, 2017, United States District Court for the District of New Jersey granted Defendant's consolidated motion to dismiss all of the complaints in MDL No. 2615 for lack of subject matter jurisdiction, and ordered that Plaintiff Michelle Bercut's ("Plaintiff") case be remanded to the Superior Court of California, County of Sonoma. But the United States District Court for the District of New Jersey stayed the effect of its January 24, 2017 order until further order of the court, allowing the plaintiffs to file amended complaints if they wished. Burns Decl., ¶ 5, Exhibit D (Opinion dated January 24, 2017 dismissing complaints without prejudice for lack of subject matter jurisdiction and remanding Michelle Bercut's case), Case No. 2:15-cv-05504-KM-JBC, Dkt. No. 51.

8. On March 2, 2017, thirty (30) days having passed without the filing of an amended complaint by any party, and Plaintiff having joined in a notice of appeal from the Court's order of dismissal and remand (which notice specifically states that the remand component is not being appealed), the United States District Court for the District of New Jersey vacated the stay of its prior order and remanded this putative class action case to state court based on its finding that Plaintiff had not established Article III standing to proceed in federal court. Burns Decl., ¶ 6, Exhibit E (Remand Order dated March 2, 2017), Case No. 2:15-cv-05504-KM-JBC, Dkt. No. 53.

9. A successive removal petition is permitted upon a "relevant change of circumstances"— "when subsequent pleadings or events reveal a new and different ground for removal." *Reyes v. Dollar Tree Stores, Inc.*, 781 F.3d 1185, 1188 (9th Cir. 2015) (quoting *Kirkbride v. Cont'l Cas. Co.*, 933 F.2d 729, 732 (9th Cir. 1991).

10.     On January 20, 2017, while this action was pending in the United States District Court for the District of New Jersey, a relevant change in circumstance occurred when the United States Court of Appeals for the Ninth Circuit issued its decision in *Syed v. M-I, LLC* and held, *inter alia*, that the plaintiff had established Article III standing in alleging a violation of 28 U.S.C. §§ 1681b(b)(2)(A)(i) and (ii), the same exact sections of the Fair Credit Reporting Act ("FCRA") at issue here.  *Syed v. M-I, LLC*, 846 F.3d 1034 (2017); *see Rea v. Michaels Stores, Inc.*, 742 F.3d 1234, 1238 (9th Cir. 2014) (a Ninth Circuit decision on point is "a relevant change of circumstances . . . justify[ing] a . . . successive, good faith petition for removal").  The United States Court of Appeals for the Ninth Circuit's *Syed* decision was not considered by the United States District Court for the District of New Jersey in remanding, but is binding on this Court.

11.     A further relevant change in circumstances occurred upon the March 2, 2017 order remanding this action to Superior Court of the State of California, County of Sonoma.

12.     For jurisdictional purposes, a removing Defendant's inquiry is limited to examining the case "as of the time it was filed in state court." *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 390 (1998).  In June 8, 2015, when this action was commenced, the law on Article III standing with respect to the FCRA claims at issue here was uncertain.  Only after the United States Court of Appeals for the Ninth Circuit's recent *Syed* decision did the law on that issue become clear.  As explained more fully below, under *Syed*, this Court has jurisdiction under CAFA and federal question jurisdiction, and the case is properly removable based on the allegations in Plaintiff's Complaint and facts known to Defendant.

## PLEADINGS, PROCESSES, AND ORDERS

13.     The Complaint alleges the following two purported claims:  (1) failure to make proper disclosure in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681b(b)(2)(A)(i)[1]; and (2) failure to obtain proper authorization in violation of the FCRA, 15 U.S.C. §§ 1681b(b)(2)(A)(ii). (*See* Complaint.)  A true and correct copy of the Complaint is attached hereto as **Exhibit 1**.

---

[1]     The Complaint erroneously cites Section 1681b(b)(2)(A)(ii) in asserting its First Cause of Action—failure to make proper disclosure in violation of the FCRA.  Section 1681b(b)(2)(A)(i) is the section of the FCRA that should have been cited. (*See* Complaint, at p. 12, First Cause of Action; *see also* 15 U.S.C. §§ 1681b(b)(2)(A)(i) and (ii).)

14.     The Complaint seeks to certify a class of "[a]ll employees or prospective employees of the Defendant in the United States who applied for a job by filling out Defendant's online Employment Application, with respect to whom Defendant procured or caused a consumer report to be procured, during the period two years prior to the filing of the Complaint in this action through the date of certification." (Complaint ¶ 55.)

15.     Attached hereto as **Exhibit 2** are true and correct copies of the remaining pleadings, processes, and orders filed in the state court action within the meaning of 28 U.S.C. § 1446(a).

## TIMELINESS OF REMOVAL

16.     This Notice of Removal is timely because it is being filed within thirty (30) days of Defendant's receipt of an "amended pleading, motion, order *or other paper* from which it may first be ascertained that the case is . . . removable." 28 U.S.C. § 1446(b)(3) (emphasis added); *Rea*, 742 F.3d at 1237.

17.     The United States Court of Appeals for the Ninth Circuit's ruling in *Syed* was issued on January 20, 2017, and the case was ordered remanded on March 2, 2017.

18.     Defendant's Notice of Removal is timely because it is filed within (30) days of the March 2, 2017 remand order. *See* 28 U.S.C. § 1446(b).

## JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT ("CAFA")

19.     This Court has original jurisdiction of this action under the CAFA, codified in pertinent part at 28 U.S.C. § 1332(d)(2). This action is properly removable, pursuant to 28 U.S.C. § 1441(a), because the aggregated amount in controversy exceeds $5,000,000, exclusive of interest and costs, at least one class member is a citizen of a state different from any Defendant (28 U.S.C. §§ 1332(d)(2) & (d)(6)), and the number of putative class members is greater than 100.  28 U.S.C. § 1332(d)(5)(B).

**I.     There Is Minimal Diversity For Removal Under CAFA**

20.     CAFA requires that "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

**A.     Plaintiff Is A Citizen Of California**

21.     For diversity purposes, a person is a "citizen" of the state in which he is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983).  A person's domicile is the

1   place she resides with the intention to remain or to which she intends to return. *Kanter v. Warner–*

2   *Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Plaintiff alleges that she "is a resident of Santa Rosa,

3   California." (Complaint ¶ 11.) Residence is *prima facie* evidence of domicile. *State Farm Mut. Auto.*

4   *Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994). For purposes of determining diversity jurisdiction,

5   various types of objective facts can establish the plaintiff's state of domicile, including place of

6   employment. *See Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986). Based on information from

7   Plaintiff's personnel file, which includes information Plaintiff submitted to Defendant throughout the

8   course of her employment, Plaintiff has, without exception, listed a California address as her current

9   address, which demonstrates "an intent to remain" in California and establishes domicile in California.

10  Declaration of Yvonne Freeman in Support of Removal ("Freeman Decl.") ¶ 9. Neither Plaintiff nor

11  Plaintiff's counsel has provided a different address or expressed any intention that Plaintiff does not

12  intend to remain domiciled in California. Plaintiff's residence and domicile in California is confirmed

13  by a search of public records for Plaintiff available through the LexisNexis SmartLinx system. That

14  search shows that, as of the latest date for which information is available, Plaintiff resides in California.

15  Burns Decl., ¶ 2, Exhibit A. Thus, Plaintiff, at all relevant times, has resided in the State of California

16  and she is, and was at the time of the filing of this action, a citizen of the United States and California.

17  **B.    Defendant Is Not A Citizen Of California**

18  22.    Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any

19  State by which it has been incorporated and of the State where it has its principal place of business." To

20  determine a corporation's principal place of business for diversity purposes, the appropriate test is the

21  "nerve center" test. *Hertz Corp. v. Friend*, 559 U.S. 77 (2010). Under the "nerve center" test, the

22  principal place of business is the state where the "corporation's officers direct, control, and coordinate

23  the corporation's activities" and where the corporation maintains its headquarters. *Id.* at 92-93. Other

24  relevant factors include where corporate executives maintain their offices, where corporate policies and

25  procedures are made, and where primary corporate functions are based. *See Ho v. Ikon Office Solutions,*

26  *Inc.*, 143 F. Supp. 2d 1163, 1168 (N.D. Cal. 2001) (nerve center found to be location where

27  corporation's headquarters was located, where the corporate officers worked, and from where corporate

28  policies and procedures arose). Thus, the "nerve center" is "where the majority of its executive and

1   administrative functions are performed." *Tosco Corp. v. Communities for a Better Environment*, 236

2   F.3d. 495, 500 (9th Cir. 2001) (citing *Industrial Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090, 1092-93

3   (9th Cir. 1990)).

4       23.     Defendant is a corporation formed under the laws of the State of Delaware.  Freeman

5   Decl. ¶ 3.  Defendant's principal place of business is Irving, Texas, which is where Defendant's

6   corporate headquarters and executive offices are located and where Defendant's high-level officers

7   direct, control, and coordinate its activities.  *Id.*;  *Hertz Corp.*, 559 U.S. 77.

8       24.     As such, Defendant has been at all relevant times a citizen of the States of Delaware and

9   Texas.  Freeman Decl. ¶ 3.  It is not now, and was not at the time of the filing of the Complaint, a citizen

10  of the State of California.

11      **C.      The Residence Of Doe Defendants Should Be Disregarded For Purposes Of
            Establishing Removal Jurisdiction**
12

13      25.     Defendant is not aware of any Doe defendant having been served with a copy of the

14  Summons and Complaint.  Pursuant to 28 U.S.C. § 1441, the residence of fictitious and unknown

15  defendants should be disregarded for purposes of establishing removal jurisdiction under 28 U.S.C.

16  § 1332.  *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants are

17  not required to join in a removal petition).  Thus, the existence of Doe Defendants one through ten, does

18  not deprive this Court of jurisdiction.

19      26.     Accordingly, pursuant to 28 U.S.C. § 1332(c), Plaintiff and Defendant have diverse

20  citizenship.  CAFA diversity is satisfied here as at least one Plaintiff is diverse from at least one

21  Defendant.

22  **II.     There Are More Than 100 Putative Class Members**

23      27.     CAFA requires that the aggregated number of members of all proposed classes in a

24  complaint be at least 100.  28 U.S.C. § 1332(d)(5)(B).

25      28.     The putative class is defined as "[a]ll employees or prospective employees of the

26  Defendant in the United States who applied for a job by filling out Defendant's online Employment

27  Application, with respect to whom Defendant procured or caused a consumer report to be procured,

28

1    during the period two years prior to the filing of the Complaint in this action through the date of

2    certification." (Complaint ¶ 55.)

3        29.    Plaintiff alleges that "thousands of Defendant's employees and prospective employees

4    would fall within the definition of the Class" (Complaint ¶ 57.) Indeed, from June 8, 2013 through the

5    present, there are well over 100 individuals who fall within the class described by Plaintiff. Thus, the

6    100 class member requirement is met here.

7    **III.    The Amount In Controversy, Accepting The Allegations In The Complaint As True,
8    Exceeds $ 5,000,000**

9        30.    While Defendant denies *any* liability as to Plaintiff's claims, it is apparent that the

10   amount in controversy here exceeds $5,000,000. The Complaint seeks to certify a class of "[a]ll

11   employees or prospective employees of the Defendant in the United States who applied for a job by

12   filling out Defendant's online Employment Application, with respect to whom Defendant procured or

13   caused a consumer report to be procured, during the period two years prior to the filing of the Complaint

14   in this action through the date of certification." (Complaint ¶ 55.)

15       31.    Plaintiff does not assert a precise number of putative class members, but predicts that the

16   number of putative class members with similar claims is "*thousands*" and alleges that Defendant

17   "processes *tens of thousands* of employment applications per year[.]" (Complaint ¶¶ 31, 57) (emphasis

18   added). In fact, in the two years prior to the filing of Plaintiff's Complaint, in excess of 5,001

19   individuals applied for a job by filling out Defendant's online Employment Application, with respect to

20   whom Defendant procured or caused a consumer report to be procured. Freeman Decl. ¶¶ 4-7, 10.

21       32.    The Complaint alleges at least two violations of the FCRA per putative class member,

22   including Plaintiff. (*See* Complaint ¶¶ 62-75) (alleging purported failure to make proper disclosure in

23   violation of FCRA, 15 U.S.C. § 1681b(b)(2)(A)(i) and purported failure to obtain proper authorization

24   in violation of FCRA, 15 U.S.C. § 1681b(b)(2)(A)(ii)). It also seeks statutory damages of "not less than

25   $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C.

26   § 1681n(a)(1)(A)." (Complaint ¶¶ 67, 73.) Presuming that there are at least 5,001 putative class

27   members multiplied by the maximum amount of statutory penalties Plaintiff claims is at issue for each

28   class member, the amount in controversy far exceeds $5,000,000.

33.     Defendant expressly reserves the right to challenge Plaintiff's claims, adequacy, and standing to represent any class, her class definition, and calculation of damages in all respects. However, for purposes of removal only, Defendant bases its calculations of the amount in controversy on the allegations, facts known to Defendant, and the class definition as pled by Plaintiff.

34.     When the amount in controversy is not apparent from the face of the complaint, a defendant may state underlying facts supporting its assertion that the amount in controversy exceeds the jurisdictional threshold. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566-67 (9th Cir. 1992). A defendant may also rely on verdicts in comparable cases to establish the amount in controversy. *Kroske v. US Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005).

35.     "The ultimate inquiry is what amount is put in controversy by the plaintiff's complaint, not what a defendant will *actually* owe." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (emphasis in original) (citations and internal quotation marks omitted). This burden "is not 'daunting,' as courts recognize that under this standard, a removing defendant is *not* obligated to 'research, state, and prove the plaintiff's claims for damages.'" *Id.* at 1204-05 (emphasis in original).[2]

36.     Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. 28 U.S.C. § 1332(d)(6). Congress intended federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (*e.g.*, damages, injunctive relief, or declaratory relief)." Sen. Jud. Comm. Rep., S. REP. 109-14, at 42. Moreover, any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal the face of th*Id.* at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case . . . Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly,

---

[2]     The Supreme Court has held that evidence establishing the amount in controversy is not required in a notice of removal, which "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).

NOTICE OF REMOVAL

1  with a strong preference that interstate class actions should be heard in a federal court if properly
2  removed by any defendant.").

3      37.    Removal under CAFA is proper where the named plaintiff's total claim for damages
4  (here, up to $1,000 as a statutory penalty for a willful violation of the FCRA) multiplied by the number
5  of potential class members (here, at least 5,001) exceeds $5,000,000.00. *Frederico v. Home Depot*, 507
6  F.3d 188, 195-197, *rev'd on other grounds* (3d Cir. 2007) (multiplying named plaintiff's damages by
7  number of putative class members to determine that the amount in controversy exceeded
8  $5,000.000.00). Multiplying Plaintiff's claim for up to $1,000 in damages by 5,001 putative class
9  members provides for a recovery in excess of the required $5,000,000 needed to confer CAFA
10  jurisdiction. When attorneys' fees are added to this number, it only becomes more apparent that the
11  jurisdictional minimum has easily been met.

12      38.    Plaintiff also seeks attorneys' fees. A reasonable estimate of fees likely to be recovered
13  may be used in calculating the amount in controversy. *Longmire v. HMS Host USA, Inc.*, 2012 U.S.
14  Dist. LEXIS 167463, at *26 (S.D. Cal. Nov. 26, 2012) ("[C]ourts may take into account reasonable
15  estimates of attorneys' fees likely to be incurred when analyzing disputes over the amount in
16  controversy under CAFA.") (*citing Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11
17  (N.D. Cal. 2002)); *Muniz v. Pilot Travel Centers LLC*, 2007 U.S. Dist. LEXIS 31515, at *15 (E.D. Cal.
18  Apr. 30, 2007) (attorneys' fees appropriately included in determining amount in controversy).

19      39.    Based on factors including the damages alleged by Plaintiff and the number of putative
20  class members, the amount in controversy here far exceeds the requirements for CAFA removal and lies
21  somewhere in excess of $5,000,000.

22      40.    As Plaintiff and Defendant are citizens of different states and the amount in controversy
23  exceeds $5,000,000, removal is proper.

24  **JURISDICTION UNDER 28 U.S.C. § 1331**

25      41.    28 U.S.C. § 1331 provides that "the district courts shall have original jurisdiction of all
26  civil actions arising under the Constitution, laws or treaties of the United States."

27      42.    Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over the instant action
28  in that Plaintiff's Complaint asserts two claims under the FCRA, 28 U.S.C. § 1681 *et seq.*, a federal

statute. (Exhibit A, Complaint at ¶¶ 62-75.) This Court has original federal question jurisdiction over Plaintiff's Complaint because these claims arise under the laws of the United States. 28 U.S.C. §1331 (conferring original jurisdiction upon federal courts for actions arising under the laws of the United States).

## VENUE

43. Plaintiff filed this action in the Superior Court of California, County of Sonoma.

44. The County of Sonoma lies within the jurisdiction of the United States District Court, Northern District of California.

45. Therefore, without waiving Defendant's right to challenge, among other things, personal jurisdiction and/or venue by way of a motion or otherwise, venue lies in the Northern District of California pursuant to 28 U.S.C. Sections 84(a), 1441(a), and 1446(a). This Court is the United States District Court for the district within which the State Court Action is pending. Thus, venue lies in this Court pursuant to 28 U.S.C. Section 1441(a). Pursuant to Civil Local Rule 3-2(c) and (d), this case should be assigned to the San Francisco or Oakland Division of this Court.

## NOTICE OF REMOVAL

46. Pursuant to 28 U.S.C. Section 1446(d), written notice of the filing of this Notice of Removal will be promptly served on Plaintiff and, together with a copy of the Notice of Removal, will be filed with the Clerk of the Superior Court of the State of California, County of Sonoma.

47. This Notice of Removal will be served on counsel for Plaintiff. A copy of the Proof of Service regarding the Notice of Removal will be filed shortly after these papers are filed and served.

//
//
//
//
//
//
//
//

11

**PRAYER FOR REMOVAL**

WHEREFORE, Defendant prays that the above action, which will be pending before the Superior Court of the State of California for the County of Sonoma upon reinstatement, be removed to the United States District Court for the Northern District of California.

DATED: March 31, 2017

Respectfully submitted,

SEYFARTH SHAW LLP

By:  _/s/ Michael J. Burns_
      Michael J. Burns

Attorneys for Defendant
MICHAELS STORES, INC.

# EXHIBIT 1

1  GLANCY PRONGAY & MURRAY LLP
   Marc L. Godino (SBN 182689)
2  Mark S. Greenstone (SBN 199606)
   1925 Century Park East, Suite 2100
3  Los Angeles, CA 90067
   Telephone: 310-201-9150
4  Facsimile: 310-201-9160
5  mgodino@glancylaw.com
   mgreenstone@glancylaw.com
6
7  NICHOLS KASTER, PLLP
   Joseph C. Hashmall
8  Kai H. Richter
   4600 IDS Center, 80 South 8th Street
9  Minneapolis, MN 55402
   Telephone: 612-256-3200
10 Fax: 612-338-4878
11 jhashmall@nka.com
   krichter@nka.com
12
   *Counsel for Plaintiff*
13 [Additional Counsel Listed on Signature Page]

14          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

15                   **COUNTY OF SONOMA**

16 MICHELLE BERCUT,                     Case No.: SCV 257268

17          Plaintiff,                  **CLASS ACTION COMPLAINT FOR:**

18     v.                               **Violation of Fair Credit Reporting Act (15
                                        U.S.C. §§ 1681, *et seq.*).**
19 MICHAELS STORES, INC.; and DOES 1
   through 10, inclusive,
20
            Defendants.                 **Jury Trial Demanded As To All Claims
21                                      That Are So Triable**

22

23

24

25

26

27

28

308686.1 MICHAELS                 COMPLAINT

**FILED**

JUN - 8 2015

Clerk of the Superior Court of California
County of Sonoma
By
           Deputy Clerk

1     Plaintiff MICHELLE BERCUT ("Plaintiff") alleges as follows upon personal knowledge as to

2 herself and her own acts and experiences, and, as to all other matters, upon information and belief,

3 including investigation conducted by her attorneys.

## PRELIMINARY STATEMENTS

5     1.     This class action arises from MICHAELS STORES, INC.'S ("Michaels" or

6 "Defendant") acquisition and use of consumer and/or investigative consumer reports as those terms

7 are defined by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, to conduct

8 background checks on Plaintiff and other prospective, current and former employees.

9     2.     Defendant routinely procures consumer reports to conduct background checks as part

10 of the employment application process. However, Defendant fails to comply with federal mandates

11 for obtaining and using consumer reports for employment purposes. Plaintiff brings this action

12 against Defendant for the violation of these federal laws.

13     3.     Although the procurement of a consumer report for employment purposes is not *per se*

14 unlawful, it is subject to strict disclosure requirements under federal law pursuant to the FCRA.

15 Among other things, an employer may not procure a consumer report concerning a job applicant or

16 employee unless a "clear and conspicuous" disclosure is made in a stand-alone document that

17 "consists solely of the disclosure" informing the applicant or employee that a report may be obtained

18 for employment purposes.

19     4.     Defendant procured consumer reports respecting Plaintiff and class members as part of

20 its standard practice and policy, but failed to provide them with a clear and conspicuous written

21 disclosure, in a document that consists solely of the disclosure, that a consumer report may be

22 obtained for employment purposes.

23     5.     Defendant's FCRA disclosure and authorization are embedded within an online

24 employment application which appears as one long continuous web page that applicants fill out. The

25 only mention Defendant makes of the fact that a consumer report will be procured for employment

26 purposes is in a series of paragraphs which appear on the same web page as numerous other pieces of

27 extraneous information, including: a purported liability release, various disclosures about who

28 Defendant may share information with, an authorization for third parties to provide information to a

1  consumer reporting agency, and numerous purported "state law notices" relating to a variety of state

2  laws. This does not satisfy the stand-alone disclosure requirement

3    6.    Indeed, many of the extraneous pieces of information included in Defendant's job

4  application, including the liability release, are the subject of longstanding FTC and judicial guidance

5  indicating that their presence alone is sufficient to render an otherwise compliant disclosure non-

6  compliant.

7    7.    To the extent that Defendant's online job application included a hyperlink to a

8  purported "Disclosure form," the hyperlinked disclosure was not a clear and conspicuous disclosure.

9  Further, the hyperlinked disclosure also contained extraneous information and therefore was not a

10  stand-alone disclosure as required by the FCRA.

11    8.    As a result of Defendant's wrongful acts and omissions, Plaintiff and other putative

12  class members have been injured, including, without limitation, by having their privacy and statutory

13  rights violated.

14    9.    As further alleged herein, Defendant's violations occurred because Defendant has

15  willfully failed to properly apprise itself of the statutory mandates before procuring consumer reports

16  to make employment decisions; violated the express and unambiguous provisions of the relevant

17  statute; and/or recklessly failed to implement reasonable procedures to assure compliance with

18  statutory mandates.

19    10.    On behalf of herself and the putative class, Plaintiff seeks statutory damages, punitive

20  damages, costs and attorneys' fees, equitable relief, and other appropriate relief for Defendant's

21  systematic and willful violations of the FCRA.

22                                    **PARTIES**

23    11.    Plaintiff MICHELLE BERCUT is a resident of Santa Rosa, California.

24    12.    Defendant MICHAELS STORES, INC. was and is, upon information and belief, a

25  Delaware corporation headquartered in Texas, and was, at all times relevant to this Complaint,

26  engaged in commercial transactions throughout this county, the State of California and the various

27  states of the United States of America.

28

2
COMPLAINT

1   13.   Plaintiff is informed and believes, and thereon alleges, that each and all of the acts and

2   omissions alleged herein was performed by, or is attributable to, MICHAELS STORES, INC. and/or

3   DOES 1 through 10 (collectively "Defendants") each acting as the agent for the other, with legal

4   authority to act on the other's behalf. The acts of any and all Defendants were in accordance with, and

5   represent, the official practice and policy of Defendants. Plaintiff is unaware of the true names or

6   capacities of the Defendants sued herein under the fictitious names DOES 1 through 10, but will seek

7   leave of this Court to amend the Complaint and serve such fictitiously-named Defendants once their

8   names and capacities become known.

9   14.   Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 10 were

10  the partners, agents, owners, shareholders, managers, or employees of MICHAELS STORES, INC. at

11  all relevant times.

12  15.   Plaintiff is informed and believes, and thereon alleges, that each of said Defendants is

13  in some manner intentionally, negligently, or otherwise responsible for the acts, omissions,

14  occurrences, and transactions of each and all of the other Defendants in proximately causing the

15  damages herein alleged.

16  16.   At all relevant times, Defendants, and each of them, ratified each and every act or

17  omission complained of herein. At all relevant times, Defendants, and each of them, aided and

18  abetted the acts and omissions alleged herein.

19  **<u>JURISDICTION AND VENUE</u>**

20  17.   This class action is brought pursuant to California Code of Civil Procedure Section

21  382.

22  18.   This Court has jurisdiction over this action pursuant to the California Constitution,

23  Article VI, Section 10. The monetary damages sought by Plaintiff exceeds the minimal jurisdictional

24  limits of the Superior Court and will be established according to proof at trial.

25  19.   This Court has concurrent jurisdiction over Plaintiff's FCRA claim under 28 U.S.C.

26  Section 1681p which provides, in pertinent part: "An action to enforce any liability created under this

27  title may be brought in any appropriate United States district court, without regard to the amount in

28  controversy, or in any other court of competent jurisdiction."

20. This Court has personal jurisdiction over Defendant because, upon information and belief, Defendant is either a citizen of California, has sufficient minimum contacts in California, or otherwise intentionally avails itself of the California market so as to render exercise of jurisdiction over Defendant by California courts consistent with traditional notions of fair play and substantial justice.

21. Venue lies within this judicial district because Defendant transacts business in this County and a substantial part of the acts and omissions alleged herein took place in this county, as Plaintiff is a resident of this county and worked at a store operated by Defendant in this county.

## STATUTORY BACKGROUND

22. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

23. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

24. Congress was particularly concerned about the use of consumer reports by employers to deny otherwise qualified job applicants or to take other adverse actions against prospective or current employees. Accordingly, Congress required employers to make a clear and conspicuous written disclosure to employees and job applicants, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes. 15 U.S.C. § 1681b(b)(2). This is commonly referred to as the "stand-alone disclosure" requirement. Congress further required that employers obtain written authorization prior to procurement of a consumer report for employment purposes. *Id.*

25. The FCRA's stand-alone disclosure requirement ensures that employees and job applicants know when reports about them are being generated. This notice is one of many elements of the FCRA that combine to ensure that consumers are aware that consumer reports are generated about them, that they know their rights, and that they have the opportunity to dispute errors in their reports.

308686.1 MICHAELS

1  15 U.S.C. § 1681b(b)(3)(A) (pre-adverse employment action notice requirement); § 1681b(4)(B)

2  (notification of national security investigation); § 1681c(h) (notification of address discrepancy); §

3  1681d(a) (disclosure of investigative report); § 1681g (full file disclosure to consumers); §

4  1681k(a)(1) (disclosure regarding the use of public record information); § 1681h (form and conditions

5  of disclosure); § 1681m(a) (notice of adverse action).

6      26.    Although the disclosure and the authorization may be combined in a single document,

7  the FTC has warned that the form should not include any extraneous information or be part of another

8  document. For example, in response to an inquiry as to whether the disclosure may be set forth within

9  an application for employment or whether it must be included in a separate document, the FTC stated:

10      The disclosure may not be part of an employment application because the language
        [of 15 U.S.C. § 1681b(b)(2)(A) ] is intended to ensure that it appears conspicuously
11      in a document not encumbered by any other information. The reason for requiring
        that the disclosure be in a stand-alone document is to prevent consumers from being
12      distracted by other information side-by-side within the disclosure.

13

14      27.    The plain language of the statute also clearly indicates that the inclusion of a liability

    release in a disclosure form violates the disclosure and authorization requirements of the FCRA,
15
    because such a form would not consist "solely" of the disclosure. In fact, the FTC expressly has
16
    warned that the FCRA notice may not include extraneous information such as a release. In a 1998
17
    opinion letter, the FTC stated:
18
        [W]e note that your draft disclosure includes a waiver by the consumer of his or her
19      rights under the FCRA. The inclusion of such a waiver in a disclosure form will
        violate Section 604(b)(2)(A) of the FCRA, which requires that a disclosure consist
20      'solely' of the disclosure that a consumer report may be obtained for employment
        purposes.
21

22      28.    In a report dated July 2011, the FTC reiterated that: "the notice [under 15 U.S.C. §

23  1681b(b)(2)(A)] may not include extraneous or contradictory information, such as a request for a

24  consumer's waiver of his or her rights under the FCRA."

25      29.    Indeed, a liability release is a particularly pernicious form of extraneous information as

26  it purports to take away the very rights Congress intended to protect.

27      30.    As discussed below, Defendant routinely violates the FCRA by failing to provide the

28  required stand-alone disclosure to employees and job applicants.

1

**FACTUAL ALLEGATIONS**

2    31.    Defendant Michaels is North America's largest arts and crafts specialty retailer with

3  more than 1,105 stores in the United States and Canada as of May, 2013.[1] On information and belief,

4  Michaels processes tens of thousands of employment applications per year.

5    32.    In or about September or October of 2014, Plaintiff applied for work with Defendant

6  by completing Defendant's online Employment Application ("Application").    Plaintiff was

7  subsequently hired by Defendant and worked in the warehouse of a Michaels store located in Santa

8  Rosa, California from approximately October 2014 to January or February of 2015.  Defendant's

9  Application, an example of which is attached as Exhibit 1, appears as a long single web page.[2] On

10  information and belief, this same Application was used regularly by Defendant for all online job

11  applicants during the relevant time period pursuant to Defendant's employment policies, procedures,

12  and/or practices.  Individuals who came to Defendant's stores to submit applications in person were

13  also directed to apply via the online Application.

14    33.    Plaintiff further alleges, on information and belief, that Defendant's online job

15  Application is the only thing provided to applicants prior to Defendant procuring a consumer report on

16  them which relates in any way the fact that a consumer report may be procured.

17    34.    Defendant's Application is a comprehensive form which requests all of the information

18  typically required on an employment application, and includes detailed fields for personal

19  information, days and hours available, education, special skills, military service and employment

20  history, among other things.

21    35.    Embedded    within    Defendant's    Application    is    a    sentence    which    states

22  "BACKGROUND CHECK PACKAGE OVERVIEW & INSTRUCTIONS" and which is followed by

23  a purported "DISCLOSURE," "STATE LAW NOTICES" and "AUTHORIZATION."    The

24  "DISCLOSURE" heading is followed by three paragraphs that provide, among other things, that the

25  company may share the information obtained with "current or prospective clients, customers, and/or

26

27  [1] See http://www.michaels.com/press-kit/ca-press-kit.html, last visited 5/19/2015.

28  [2] Because Exhibit 1 is a pdf download, it is broken into multiple pages.  These page breaks are not part
of Defendant's application which is presented to applicants as one long single form.

1   their agents"; that the authorization will continue to remain in effect during employment; and, that the

2   company reserves the right to avail itself of any rights under applicable federal, state or local laws.

3   The "STATE LAW NOTICES" heading is followed by eight paragraphs that contain purported

4   disclosures for seven different states. The "AUTHORIZATION" repeats that the authorization will

5   remain valid throughout the term of employment and contains an affirmation that the applicant has

6   reviewed and understands "the information, statements, and notices in the Background Check

7   Disclosure and Authorization form, including the State Law Notices."

8        36.   Further down the Application and within the same document the term "APPLICATION

9   AGREEMENT" appears, followed by a paragraph which also purports to disclose that a background

10  investigation may be performed and to authorize the furnishing of such information. Importantly, this

11  paragraph also purports to release Michaels and all third parties from any liability, providing, in

12  pertinent part: "I authorize anyone possessing this information to furnish it to Michaels Stores, Inc.

13  and/or a third party company upon request, and release anyone so authorized, Michaels, and any third

14  party company from all liability and damages whatsoever in furnishing, obtaining or using said

15  information."

16       37.   All of the information contained in Defendant's Application was conveyed to Plaintiff

17  on a single webpage, viewable on a single computer screen, and residing at a single web address.

18  Plaintiff was not required to click on anything, or to fill in any boxes to review the entirety of this

19  information at a single time.

20       38.   The liability release, lengthy state law notices and other extraneous information

21  contained within and surrounding Defendant's purported disclosure, examples of which are provided

22  above, would each taken individually suffice to render Defendant's Application non-compliant.

23  Taken together, there is no question that Defendant's Application violates the FCRA, and that the

24  violation is willful.

25       39.   To the extent that Defendant's Application included a hyperlink to a purported

26  "Disclosure form," the hyperlinked disclosure was not a clear and conspicuous disclosure because

27  (among other things) the disclosure was not provided unless applicants clicked on the hyperlink, the

28  hyperlink was buried approximately 70% of the way through the online job application, and the

1  hyperlink was contained in a parenthetical clause which itself suggested that clicking the hyperlink

2  would merely produce a printer-friendly version of the on-screen document, not another document.

3  Further, the hyperlinked disclosure also contained extraneous information, including (among other

4  things):

- Information regarding a different type of consumer report ("an investigative consumer report") that was not obtained in connection with job applications;

- A statement that Defendant may share the information contained in a consumer report with Defendant's "current and prospective clients, customers and/or their agents";

- A reservation of unspecified legal rights; and

- The mailing and website address for Defendant's consumer report vendor.

12      40.    Thus, the hyperlinked disclosure also was not a stand-alone disclosure as required by

13  the FCRA.

14      41.    On information and belief, despite its failure to provide Plaintiff with the required

15  stand-alone disclosure, following Plaintiff's submission of the Application, Defendant procured or

16  caused to be procured a consumer report on Plaintiff, in accordance with Defendant's standard

17  practice and procedure.

18      42.    On information and belief, Defendant does not perform these background checks in-

19  house.  Rather, Defendant hires one or more outside consumer reporting agencies to obtain this

20  information and report it to Defendant for a fee.  These reports therefore constitute "consumer reports"

21  within the meaning of the FCRA.

22      43.    On information and belief, Defendant used General Information Services ("GIS") to

23  procure consumer reports during the class period.

24      44.    GIS has provided its clients with a number of advisories related to the FCRA's stand-

25  alone disclosure requirement. In 2012, GIS issued an advisory which reminded its clients that

26  "[f]undamentally, the message of an FCRA disclosure is 'we are going to get a background check

27  about you.' Employers with information that is on their disclosure form and [sic] is not giving this

28

1  fundamental message should immediately **move that information to another form.**" (Emphasis in

2  original.)  Furthermore, on May 1, 2014, GIS issued an advisory stating:

3      A disclosure that a background check will be conducted must be given to the
       applicant or employee prior to the check being conducted. This disclosure must be in
4      writing and in a document that consists **solely of the disclosure**. It should not be part
       of a printed employment application form, and it should not include a release of
5      liability. The fundamental message of the disclosure is that "we will conduct a
       background check on you." **Any other information should be removed from the**
6      **disclosure.**

7
   (Emphasis in original.)
8

9      45.    The FCRA requires that, prior to procuring consumer reports, employers must certify

10  to the consumer reporting agency that they will comply with the FCRA's stand-alone disclosure

11  requirements. *See* 15 U.S.C. § 1681b(b)(1).

12     46.    In accordance with GIS's standard procedures, GIS required Defendant to certify that it

13  would comply with the stand-alone disclosure provisions of the FCRA.

14     47.    Defendant did, in fact, certify to GIS that it would comply with the stand-alone

15  disclosure provisions of the FCRA.

16     48.    In its contract with GIS, Defendant agreed that before obtaining a consumer report,

17  Defendant would provide a disclosure in writing to the consumer that a consumer report will be

18  obtained for employment purposes and that such disclosure will be made in a document consisting

19  solely of the disclosure.

20     49.    Defendant also agreed to contact GIS to obtain special procedures for preparation and

21  use of a consumer report in the case of suspected misconduct or violation of state, federal, or local

22  law.  On information and belief, Plaintiff's and class members' reports were not procured by

23  Defendant using the special procedures referred to in the contract for these kinds of reports.

24     50.    On information and belief, Defendant did not procure Plaintiff's and class members'

25  reports in connection with any investigation of suspected misconduct relating to employment, or

26  compliance with federal, state, or local laws and regulations, the rules of a self-regulatory

27  organization, or any preexisting written policies of the employer.

28

9
COMPLAINT

1    51.    Despite the warnings it received from GIS, and the representations it made to GIS,

2  Defendant failed to provide its applicants with a stand-alone disclosure,

3    52.    Defendant's conduct unambiguously violates the FCRA.  By embedding its purported

4  disclosure in an employment application and including extraneous information within and around the

5  disclosure, including without limitation a liability waiver, Defendant disregarded well-established case

6  law and regulatory guidance from the FTC as well as guidance from its own consumer report

7  vendor(s), in violation of Section 1681b(b)(2)(A) of the FCRA.  Additionally, the inclusion of the

8  extraneous provisions causes the disclosure to fail to be "clear and conspicuous" and "clear[] and

9  accurate[]," and violates Section 1681b(b)(2)(A) for this reason as well.

10    53.    Defendant's multiple violations of the FCRA combined with its knowledge of the

11  requirements of federal law provides further evidence that Defendant's violations were willful.

12                          **CLASS ACTION ALLEGATIONS**

13    54.    Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

14    55.    Plaintiff asserts the following Class:

15    All employees or prospective employees of the Defendant in the United States who applied for

16  a job by filling out Defendant's online Employment Application, with respect to whom  Defendant

17  procured or caused a consumer report to be procured, during the period two years prior to the filing of

18  the Complaint in this action through the date of certification.

19    56.    Members of the Class, as described above, will be referred to as "class members."

20  Excluded from the Class are: (1) Defendant, any entity or division in which Defendant has a

21  controlling interest, and its legal representatives, officers, directors, assigns, and successors; and (2)

22  the Judge to whom this case is assigned and the Judge's staff.  Plaintiff reserves the right to amend the

23  above Class and to add subclasses as appropriate based on investigation, discovery, and the specific

24  theories of liability.

25    **Numerosity**

26    57.    The proposed Class is so numerous that joinder of all class members is impracticable.

27  Defendant regularly obtains and uses information in consumer reports to conduct background checks

28  on prospective and existing employees.  Given the number of employees working for Defendant,

1   Plaintiff believes that during the relevant time period, thousands of Defendant's employees and

2   prospective employees would fall within the definition of the Class.

3       **Common Questions of Law and Fact**

4       58.    Virtually all of the issues of law and fact in this class action predominate over any

5   questions affecting individual class members. Among the questions of law and fact common to the

6   Class are:

7       a.  Whether Defendant uses consumer report information to conduct background checks on

8           current and prospective employees;

9       b.  Whether Defendant fails to disclose to current and prospective employees that a consumer

10          report will be requested in a standalone document consisting solely of the disclosure;

11      c.  Whether the Defendant violated the FCRA by procuring consumer report information

12          based on invalid authorizations;

13      d.  Whether Defendant's violations of the FCRA were willful; and,

14      e.  The proper measure of statutory and punitive damages.

15      **Typicality**

16      59.    Plaintiff's claims are typical of the members of the proposed Class.  Defendant

17  typically requires job applicants to apply via an online employment application with a purported

18  FCRA disclosure and authorization embedded within a long form that contains extraneous

19  information, including a liability release, which clearly render the disclosure non-compliant.  The

20  FCRA violations suffered by Plaintiff are typical of those suffered by other class members, and

21  Defendant treated Plaintiff consistent with other class members in accordance with its standard

22  policies and practices.

23      **Adequacy of Representation**

24      60.    Plaintiff, as a representative of the Class, will fairly and adequately protect the interests

25  of the Class and has no interests that conflict with or are antagonistic to the interests of the other class

26  members.  Plaintiff has retained attorneys competent and experienced in class action litigation. No

27  conflict exists between Plaintiff and members of the Class.

28

1    **Superiority**

2       61.    A class action is superior to all other available methods for the fair and efficient

3    adjudication of this controversy.  Defendants' conduct described in this Complaint stems from

4    common and uniform policies and practices, resulting in common violations of the FCRA, and the

5    names and address of the class members are available from Defendant's records.  This case therefore

6    lends itself to class treatment.  Furthermore, class members do not have an interest in pursuing

7    separate actions against Defendant, as the amount of each class member's individual claims is small

8    compared to the expense and burden of individual prosecution.  Class certification will also obviate

9    the need for unduly duplicative litigation that might result in inconsistent judgments concerning

10   Defendant's practices.  Finally, Plaintiff is unaware of any difficulty which will be encountered in the

11   management of this litigation which would preclude class certification.

12                              **FIRST CAUSE OF ACTION**

13                **Failure to Make Proper Disclosure in Violation of FCRA**

14                        **(15 U.S.C. §§ 1681b(b)(2)(A)(ii))**

15       62.    Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

16       63.    Defendant violated the FCRA by the use of a disclosure form that contains extraneous

17   information other than the disclosure, and that is embedded within an employment application.

18       64.    The foregoing violations were willful as Defendant was aware of its obligation to

19   provide a clear and conspicuous disclosure in a document consisting solely of the disclosure.

20       65.    Based upon facts likely to have evidentiary support after a reasonable opportunity for

21   further investigation and discovery, Defendant had and has a policy and practice of failing to provide

22   adequate written disclosures to job applicants and employees, before procuring consumer reports or

23   causing consumer reports to be procured.  Pursuant to that policy and practice, Defendant procured

24   consumer reports or caused consumer reports to be procured for Plaintiff and class members without

25   first providing a written disclosure in compliance with Section 1681b(b)(2)(A) of the FCRA.

26       66.    Defendant's willful conduct is reflected by, among other things, the following facts:

27          a.    The FCRA was enacted in 1970; Defendant, which was founded in 1976, has

28   had almost 40 years to become compliant;

1           b.      Defendant is a large corporation with access to legal advice through its own

2 General Counsel's office and outside employment counsel;

3           c.      Defendant's conduct is inconsistent with the FTC's longstanding regulatory

4 guidance, judicial interpretation, and the plain language of the statute

5           d.      Defendant knew or had reason to know from its communications with GIS that

6 Defendant's conduct violated the FCRA;

7           e.      Defendant certified to GIS that it would comply with the disclosure

8 requirements of the FCRA but failed to do so;

9           f.      Defendant repeatedly and routinely uses the online job Application it used with

10 Plaintiff prior to procuring consumer reports;

11           g.      Defendant's inclusion of a liability release in its job Application clearly

12 indicates awareness by Defendant that it could be held liable for improperly procuring a consumer

13 report and represents an effort to avoid such liability;

14           h.      Despite the clear statutory text and depth of guidance on the subject, Defendant

15 systematically procured consumer reports without first disclosing in writing to the consumer *in a*

16 *document that consists solely of the disclosure*, that a consumer report may be obtained for

17 employment purposes; and

18           i.      By adopting such a policy, Defendant voluntarily ran a risk of violating the law

19 substantially greater than the risk associated with a reading that was merely careless.

20      67.      Plaintiff and class members are entitled to statutory damages of not less than $100 and

21 not more than $1000 for each and every one of these violations, pursuant to 15 U.S.C. §

22 1681n(a)(1)(A).

23      68.      Plaintiff and class members are also entitled to punitive damages for these violations

24 pursuant to 15 U.S.C. § 1681n(a)(2).

25      69.      Plaintiff and class members are further entitled to recover their costs and attorneys'

26 fees, pursuant to 15 U.S.C. § 1681n(a)(3).

27

28

## SECOND CAUSE OF ACTION

**Failure to Obtain Proper Authorization in Violation of FCRA**

**(15 U.S.C. § 1681b(b)(2)(A)(ii))**

70.     Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

71.     The two signature boxes contained within Defendant's Application state above the box: "Signature (by typing in this field, you are electronically signing this form.)" and do not purport to authorize the procurement of a consumer report. As a result, and because Defendant failed to make a clear and conspicuous disclosure that a consumer report may be procured in a document consisting solely of the disclosure, Defendant violated the FCRA by procuring consumer reports relating to Plaintiff and other putative class members without proper authorization. *See* 15 U.S.C. § 1681b(b)(2)(A)(ii).

72.     The foregoing violations were willful. Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff and other class members under 15 U.S.C. § 1681b(b)(2)(A)(ii). Defendant's willful conduct is reflected by, among other things, the facts previously set forth.

73.     Plaintiff and class members are entitled to statutory damages of not less than $100 and not more than $1000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A).

74.     Plaintiff and class members are also entitled to punitive damages for these violations pursuant to 15 U.S.C. § 1681n(a)(2).

75.     Plaintiff and class members are further entitled to recover their costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

**WHEREFORE,** Plaintiff respectfully requests that this Court issue an Order:

a.      That this action may proceed as a class action under Section 382 of the California Code of Civil Procedure;

b.      Designating Plaintiff as class representative and designating Plaintiff's counsel as counsel for the Class;

c.      Directing proper notice to be mailed to the Class at Defendant's expense;

1    d.    Holding that Defendant committed multiple, separate violations of the FCRA;

2    e.    Holding that Defendant acted willfully in deliberate or reckless disregard of Plaintiff's

3    and class members' rights, and its obligations, under the FCRA;

4    f.    Awarding statutory damages in an amount of $1,000 per violation and punitive

5    damages as provided by the FCRA;

6    h.    Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

7    i.    Granting other and further relief, in law or equity, as this Court may deem appropriate

8    and just.

9

10   Dated: June 8, 2015

GLANCY PRONGAY & MURRAY LLP

11

12   By: _____
     Marc L. Godino

13   Mark S. Greenstone
     1925 Century Park East, Suite 2100

14   Los Angeles, CA 90067
     Telephone: 310-201-9150

15   Facsimile: 310-201-9160
     mgodino@glancylaw.com

16   mgreenstone@glancylaw.com

17

     NICHOLS KASTER, PLLP
18   Joseph C. Hashmall
     Kai H. Richter

19   4600 IDS Center, 80 South 8th Street
     Minneapolis, MN 55402

20   Telephone: 612-256-3200

21   Fax: 612-338-4878
     jhashmall@nka.com

22   krichter@nka.com

23
     KENDALL LAW GROUP, LLP
24   Joe Kendall
     3232 McKinney Ave

25   Suite 700
     Dallas, TX 75204

26   Telephone: 214-744-3000
     Facsimile: 214-744-3015

27   jkendall@kendalllawgroup.com

28

308686.1 MICHAELS

1

2

3       GOTTLIEB & ASSOCIATES
        Jeffrey M. Gottlieb
4       Dana L. Gottlieb
        150 East 18th Street, Suite PHR
5       New York, NY 10003
        Telephone: 212.228.9795
6       Facsimile: 212.982.6284
        nyjg@aol.com
7       danalgottlieb@aol.com

8       *Counsel for Plaintiff*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

308686.1 MICHAELS                          COMPLAINT

# EXHIBIT 2

**POS-015**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Mark S. Greenstone (SBN 199606)<br>Glancy Prongay & Murray LLP<br>1925 Century Park East, Suite 2100<br>Los Angeles, CA 90067<br>　TELEPHONE NO.: (310) 201-9150　　　　FAX NO. *(Optional)*: (310) 201-9160<br>E-MAIL ADDRESS *(Optional)*: mgreenstone@glancylaw.com<br>　ATTORNEY FOR *(Name)*: Plaintiff Michelle Bercut | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF Sonoma |
|---|
| 　STREET ADDRESS: 600 Administration Drive<br>　MAILING ADDRESS: 600 Administration Drive<br>　CITY AND ZIP CODE: Santa Rosa, 95403<br>　BRANCH NAME: Hall of Justice |

| PLAINTIFF/PETITIONER: Michelle Bercut |
|---|
| DEFENDANT/RESPONDENT: Michaels Stores, Inc. |

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>SCV-257268 |
|---|---|

TO *(insert name of party being served)*: Defendant Michaels Stores, Inc.

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: June 16, 2015

Mark S. Greenstone
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing)*:
1. ☑  A copy of the summons and of the complaint.
2. ☑  Other *(specify)*:

　　Civil Cover Sheet, Notice of Assignment

*(To be completed by recipient)*:

Date this form is signed:

Michael Burns for Defendant Michaels Stores, Inc.
_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

▶ _____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 (Rev. January 1, 2005) | NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL | Page 1 of 1<br>Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov |
|---|---|---|

**PROOF OF SERVICE**

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 560 Mission Street, 31st Floor, San Francisco, California 94105. On June 18, 2015, I served the within document(s):

**NOTICE AND ACKNOWLEDGEMENT OF RECEIPT - CIVIL**

☐ I sent such document from facsimile machines (415) 397-8549 on June 17, 2015. I certify that said transmission was completed and that all pages were received and that a report was generated by said facsimile machine which confirms said transmission and receipt. I, thereafter, mailed a copy to the interested party(ies) in this action by placing a true copy thereof enclosed in sealed envelope(s) addressed to the parties listed below.

☐ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at San Francisco, California, addressed as set forth below.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐ by placing the document(s) listed above, together with an unsigned copy of this declaration, in a sealed envelope or package provided by an overnight delivery carrier with postage paid on account and deposited for collection with the overnight carrier at San Francisco, California, addressed as set forth below.

☐ by transmitting the document(s) listed above, electronically, via the e-mail addresses set forth below.

☐ electronically by using the Court's ECF/CM System.

Mark S. Greenstone
Glancy Prongay & Murray LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
(310) 201-9150/(310) 201-9160 (facsimile)
mgreenstone@glancylaw.com

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on June 18, 2015, at San Francisco, California.

_____
Nancy J. Davilla



Seyfarth Shaw LLP

560 Mission Street, 31st Floor

San Francisco, California 94105

(415) 397-2823

fax (415) 397-8549

www.seyfarth.com

Writer's direct phone
(415) 732-1109

Writer's e-mail
mburns@seyfarth.com

June 18, 2015

Mark S. Greenstone
Glancy Prongay & Murray LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067

     Re:   *Bercut v. Michaels Stores, Inc.*
            Sonoma County Superior Court Case No. SCV-257268

Dear Mr. Greenstone:

     Per the request of Michael Burns, please find enclosed the signed Notice and Acknowledgment of Receipt - Civil for Michaels Stores, Inc. in the above-referenced matter.

     Please contact this office if you have any questions. Thank you.

                       Very truly yours,

                       SEYFARTH SHAW LLP

                       Nancy J. Davilla
                       Interim Legal Secretary to Michael J. Burns

MJB:njd
Enclosure

WASHINGTON, D.C.   SYDNEY   SHANGHAI   SAN FRANCISCO   SACRAMENTO   NEW YORK   MELBOURNE   LOS ANGELES   LONDON   HOUSTON   CHICAGO   BOSTON   ATLANTA